# EXHIBIT A

FILED
TARRANT COUNTY
5/11/2021 9:48 AM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO.** _342-325182-21_____

| | | |
|---|---|---|
| **MEOCHI SCOTT;** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **TARRANT COUNTY, TEXAS** |
| | § | |
| **SHARKNINJA OPERATING, LLC; AND** | § | |
| **EP MIDCO, LLC;** | § | |
| | § | |
| **Defendants.** | § | _____ **JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Meochi Scott files Plaintiff's Original Petition complaining of

Defendants SharkNinja Operating, LLC and EP MIDCO, LLC.

### I. DISCOVERY CONTROL PLAN

Discovery is intended to be conducted under Level 3 pursuant to Rule 190

of the TEXAS RULES OF CIVIL PROCEDURE.

### II. RULE 47 PLEADING REQUIREMENTS

As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff's

counsel states that the damages sought are in an amount within the

jurisdictional limits of this Court.  As required by Rule 47(c), Texas Rules of Civil

Procedure, Plaintiff's counsel states that Plaintiff seeks monetary relief of over

$250,000 but not more than $1,000,000.  The amount of monetary relief actually

awarded, however, will ultimately be determined by a jury.  Plaintiff also seeks

pre-judgment and post-judgment interest at the highest legal rate.

## III. PARTIES

Plaintiff Meochi Scott is an individual resident of Crowley, Tarrant County, Texas. Her driver's license number is *****295 and her social security number is ***-**-*517.

Defendant SharkNinja Operating, LLC (Hereinafter "SharkNinja") is a foreign corporation formed under the laws of the state of Delaware with its principal place of business in Delaware. SharkNinja sold and distributed pressure cookers, among other products, throughout the State of Texas and the litigation arises out of the use of one of those pressure cookers. These acts of SharkNinja constitute "doing business" in the State of Texas, thereby establishing personal jurisdiction under §17.041 (as defined by §17.042) of the Texas Civil Practice & Remedies Code. SharkNinja does not maintain a registered agent in the State of Texas. Therefore, pursuant to §17.044 of the Texas Civil Practice & Remedies Code, SharkNinja may be served with process by serving its registered agent, Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

Defendant EP MIDCO, LLC is a corporation doing business in Wilmington, New Castle County, Delaware and may be served with process by serving its registered agent, Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## IV. JURISDICTION AND VENUE

The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of this Honorable Court.

This Court has venue over the parties to this action since the incident complained of herein occurred in Tarrant County, Texas. Venue therefore is proper in Tarrant County, Texas pursuant to the TEXAS CIVIL PRACTICE & REMEDIES CODE §15.002.

The Defendants are subject to specific personal jurisdiction in this matter before this Court.

When assessing specific personal jurisdiction, the Court's first step "is to determine whether the connection between the forum and the episode-in-suit could justify the exercise of specific jurisdiction" because courts have the "ability to hear claims against out-of-state defendants when the episode-in-suit occurred in the forum or the defendant purposefully availed itself of the forum,"[1] and this case far exceeds that threshold.

The location of the episode-in-suit is the location of the incident regardless of where the product was manufactured or where it was first sold,[2] and that location is Texas.

When assessing specific personal jurisdiction, the Court's second step "is to consider several additional factors to assess the reasonableness of entertaining the case."[3]

When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State... it has clear notice that it is subject to suit there

---

[1] *Daimler AG v. Bauman,* 134 S. Ct. 746, 755, 762 (2014).

[2] *Goodyear Dunlop Tires Ops. V. Brown,* 131 S.Ct. 2846, 2851 (2011) ("the episode-in-suit, the bus accident, occurred in France" notwithstanding the fact that "the tire alleged to have caused the accident was manufactured and sold" in Turkey).

[3] *Daimler AG,* 134 S. Ct. at 762.

[and if] the sale of a product of a manufacturer... is not simply an isolated occurrence, but arises from the efforts of the manufacturer... to serve **directly or indirectly**, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has been the source of injury to its owner or to others,"[4] and this clearly applies to SharkNinja's relationship with Texas.

Where nonresident defendants "purposefully derive benefit" from their interstate activities... it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities [because] the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed,"[5] and SharkNinja has purposefully obtained such benefits.

"The placement of a product into the stream of commerce" plus "[a]dditional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, ... advertising in the forum State [or] establishing channels for providing regular advice to customers in the forum State,"[6] and SharkNinja has engaged in such advertising and has established such channels of communication in Texas.

---

[4] *See World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), quoted in *Spir Star AG v. Kimich,* 310 S.W.3d 868, 873-74 (Tex. 2010) (emphasis by the Texas Supreme Court).
[5] *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473-74, 105 S.Ct. 2174, 2182-83 (1985).
[6] *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 112, 107 S. Ct. 1026, 1032 (1987) (O'Connor, J., plurality)

"The stream-of-commerce cases... relate to exercises of specific jurisdiction in products liability actions, in which a nonresident defendant, acting outside the forum, places in the stream of commerce a product that ultimately causes harm inside the forum," because the "[f]low of a manufacturer's products into the forum may bolster an affiliation germane to *specific* jurisdiction,"[7] and this aptly characterizes SharkNinja's conduct in relation to the harms at issue which SharkNinja caused inside the Texas forum.

A nonresident defendant is subject to personal jurisdiction under the Texas long-arm statute by virtue of doing business in Texas, by contracting with Texas residents pursuant to contracts to be performed in part in Texas, by committing torts where one or more elements of the tort occurred in Texas, and by recruiting Texas residents for employment,"[8] and SharkNinja has engaged in such business in Texas.

There is no burden on SharkNinja to litigate this civil action in the Texas forum where the incident occurred.

Texas has an interest in adjudicating this dispute which occurred in Texas as it involves the assessment of a product that failed in Texas which has seriously injured Meochi Scott, a Texas resident.

Meochi Scott's interest in obtaining convenient and effective relief militates in favor of litigation in the Texas forum where the incident occurred and where the post-incident treatments and events are located.

---

[7] *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2849 (2011) (emphasis in original).
[8] Tex. Civ. Prac. & Rem. Code § 17.042.

The interstate judicial system's interest in obtaining the most efficient resolution of controversies warrants litigating this case in Texas where the defective product at issue failed, where the incident occurred, and where the victim resided.

### A.   SHARKNINJA

SharkNinja researched, developed, designed, industrialized, manufactured, assembled, inspected, tested, marketed, distributed, sold, and placed into the stream of commerce the Ninja Foodi Tendercrisp/Pressure Cooker involved in the incident at issue, which occurred in Texas and caused injury to Meochi Scott.

The exercise of specific personal jurisdiction over SharkNinja pursuant to the Texas long-arm statute is consistent with the Due Process Clause and the principles of fundamental fairness by virtue of SharkNinja doing business in Texas.

SharkNinja places its Ninja Foodi Tendercrisp/Pressure Cooker into the stream of commerce by targeting Texas through hundreds of commercial retailers with stores in hundreds of cities and towns in Texas. Specifically, retailers such as WalMart, Sam's Club, Target, and Kohls actively sell SharkNinja products, including the defective Ninja Foodi Tendercrisp/Pressure Cooker at issue, may be purchased.

SharkNinja has an active website accessible in Texas where SharkNinja engages in the direct sale of SharkNinja products from this website. SharkNinja additionally sells its products through major retailers who sell SharkNinja products on their websites that are accessible in Texas.

In addition to placing the Ninja Foodi Tendercrisp/Pressure Cooker into the stream of commerce, SharkNinja has also indicated an intent to serve the market in Texas by engaging in the additional conduct of establishing channels for providing regular advice to customers in Texas, including but not limited to their active website.

Because SharkNinja purposefully derives benefit from its interstate activities, it would be unfair to allow SharkNinja to escape having to account in Texas for consequences that arise proximately from SharkNinja's interstate activities.

Allowing SharkNinja to escape jurisdiction would improperly allow SharkNinja to wield the Due Process Clause as a territorial shield to avoid interstate obligations that SharkNinja has voluntarily assumed.

## V.  FACTUAL BACKGROUND

Plaintiff purchased a Ninja Foodi Tendercrisp/Pressure Cooker, (Hereinafter "the pressure cooker") which was manufactured and designed by Defendant SharkNinja, at Sam's Club in Burleson, Texas.

On June 17, 2020, Meochi Scott was preparing to make beef ribs in the pressure cooker. Prior to this date, Ms. Scott had used her pressure cooker without any issues. With regards to the contents, the beef ribs did not completely fill the removable pot. Approximately 2-2½ hours of use, the indicator displayed Low/No Water. The cooker was turned off, and she subsequently discharged pressure at the Pressure Release Valve. With no further discharge, Meochi Scott

rotated the Pressure Lid to open, and there was a sudden discharge of steam and hot food, which resulted in her injuries.

Upon information and belief, the pressure cooker was a dangerous and defective product due to the close placement of the pressure release valve to the red float valve. As such, it should have been foreseeable to the manufacturer that obstructions can occur during the release of steam/pressure, together with food particles, which can also affect the safe operation of the red float valve. If, obstructed, the red float valve will not only give a false indication that the pressure has subsided, but will also negate the locking mechanism of the lid. Upon information and belief, during pressure release, blockage occurred at the red gloat valve, such that its button dropped, with corresponding release of the safety locking tab, in all a dangerous condition that led to the injuries of Plaintiff once the pressure lid was detached.

## VI. CAUSES OF ACTION

### A.   NEGLIGENCE

At all times relevant to this cause of action, SharkNinja, acting by and through its employees, agents, and/or vice principals, had a duty to act reasonably and prudently in the design, manufacture, promotion, and/or distribution of the pressure cooker and other pressure cookers similar to it.

Defendant breached its duty, by and among other acts and/or omissions, designing, manufacturing, distributing and promoting a pressure cooker with a defective design, designing, manufacturing, distributing and promoting a pressure cooker that had associated with its use an unsafe recognized hazard of rapid

release of stored energy, by failing to adequately test and/or inspect the design and manufacture of the pressure cooker and by failing to warn users of its products of the known dangers to a user of this and similar pressure cooker.

The above-referenced acts and/or omissions, each individually and collectively, were proximate causes of the injuries to Plaintiffs.

## B. STRICT LIABILITY

SharkNinja, by and through its employees, agents, and representatives and vice principals, are the designers, manufacturers, distributors, promoters, and/or sellers of the product in question.

At the time the product in question was designed, manufactured, distributed, promoted, and/or sold, it was a defective product, unreasonably dangerous to potential customers and/or users in that it had associated with its use an unsafe recognized hazard of rapid release of stored energy, as well as a defective design and/or a lack or warning and instructions to the users of the pressure cooker so that the pressure cooker could be used in a safe manner.

The pressure cooker in question was in substantially the same defective condition on June 17, 2020 as it was when Defendant placed it into the stream of commerce.

The pressure cooker was defective and unsafe for its intended purposes at the time it left control of SharkNinja because it deviated from its specification or planned output in a manner that rendered the product unreasonably dangerous.

The pressure cooker was defective and unsafe for its intended purposes at the time it left control of SharkNinja because a safer alternative design was available to SharkNinja that, in reasonable probability (1) would have prevented or significantly reduced Plaintiff's damages without substantially impairing the product's utility; and (2) was economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge at the time the product left the control of the Defendant.

The defective condition of the pressure cooker and/or the failure of the Defendant to warn of this condition rendered the pressure cooker unreasonably dangerous and was the producing cause of Plaintiff's injuries.

## C.   GROSS NEGLIGENCE

The above-referenced acts and/or omissions, when viewed objectively from the standpoint of SharkNinja at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others, and were of such a nature that SharkNinja had, or should have had, a subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including but not limited to the Plaintiff. As such, Plaintiff is entitled to recover exemplary/punitive damages as allowed by law for this conduct.

## VII. DAMAGES

As a proximate result of Defendants' negligence, Plaintiff suffered extensive injuries and damages. As a result of Plaintiff's injuries, Plaintiff suffered the following damages:

    a.      Medical expenses in the past and future;

    b.      Disfigurement;

    c.      Exemplary Damages;

    d.      Physical impairment in the past and future;

    e.      Physical pain and suffering in the past and future; and

    f.      Mental anguish in the past and future.

## VIII.  EXEMPLARY DAMAGES

Defendants acted with conscious disregard for the rights, welfare, and safety of Plaintiff. Accordingly, Plaintiff seeks an award of exemplary damages as a result of Defendants' gross negligence.

## IX.  JURY TRIAL AND OBJECTION TO E-JURY

Plaintiff demands a trial by jury and includes the appropriate jury fees. Plaintiff objects to an electronic jury pool in this case.  A jury pool assembled solely based upon electronic responses does not accurately represent the Tarrant County community as a whole.

## X.  RELIEF

Plaintiffs pray the Defendants be cited to appear herein and answer, and upon final hearing, they be awarded a judgment against the Defendants for their actual or compensatory damages (past and future) as set forth above and/or to the fullest extent allowed by law and which the jury deems to be fair and reasonable; exemplary/punitive damages as described above in an amount the jury deems to be fair and reasonable; costs of court; pre-judgment interest and post-judgment interest at the highest lawful rate until the judgment is satisfied in

full; and for any and all other relief, both at law and in equity, which the jury

deems to be fair and reasonable, and to which Plaintiff may show herselves to be

justly entitled.

Respectfully submitted,

**WITHERITE LAW GROUP, PLLC**

BY: */s/ Lauren Jobin*
**LAUREN JOBIN**
State Bar No. 24081263
lauren.jobin@witheritelaw.com
**SHELLY GRECO**
State Bar No. 24008168
shelly.greco@witheritelaw.com
10440 N. Central Expressway
Suite 400
Dallas, TX 75231-2228
214/378-6665
214/378-6670 (fax)

**ATTORNEYS FOR PLAINTIFF**